# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

JULIO A. ATILES-GABRIEL,

Petitioner,

v.

COMMONWEALTH OF PUERTO RICO; and EDWARD GARCIA-SOTO, Warden, Puerto Rico Department of Corrections and Rehabilitation,

Respondents.

CIVIL NO. 15-2108 (GAG)

## MEMORANDUM AND ORDER

This case involves a petition for writ of habeas corpus under 28 U.S.C. § 2254 brought by Julio A. Atiles-Gabriel ("Atiles-Gabriel") against the Commonwealth of Puerto Rico ("Commonwealth") and Edward Garcia-Soto, the Warden of the Puerto Rico Department of Corrections and Rehabilitation ("Warden") (collectively, "Respondents"). (Docket No. 2.) Through this section 2254 petition, Atiles-Gabriel, who is currently serving a 144-year prison term, seeks collateral review of the constitutionality of his conviction and sentence by the Commonwealth.[1]

### I. Factual and Procedural Background

On August 15, 2015, Atiles-Gabriel filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 2.) Section 2254 grants federal courts the authority to entertain a habeas petition brought by an individual in state custody, pursuant to a state court judgment, on the basis

---

[1] In 1997, Atiles-Gabriel was arrested and subsequently convicted in state court for first-degree murder, carjacking, and various violations of the Puerto Rican Weapons Law. (Docket Nos. 2, 6). On April 2, 1998, he was sentenced to an aggregate term of 144 years in prison. (Docket No. 6, at 2.) Atiles-Gabriel previously filed for habeas relief, which was dismissed on procedural grounds for failure to exhaust. Atiles-Gabriel v. Edgar Pagan Monde, No. 11-2060 (CCC) (D.P.R. filed Oct. 26, 2011). Now, Atiles-Gabriel petitions for habeas relief, claiming ineffective assistance of counsel and actual innocence. (See Docket No. 6.)

**Civil No. 15-2108 (GAG)**

that the individual is in custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2254. Atiles-Gabriel tethers his due process constitutional claims to ineffective assistance of counsel and actual innocence. (Docket No. 2, 6.) The Court appointed the Federal Public Defender ("FPD") to represent the Atiles-Gabriel and ordered the FPD to assess the viability of the petition. (Docket No. 4.) The FPD recommended that the petition was viable, and Respondents were subsequently served. (Docket Nos. 6, 8.)

On May 3, 2017, before Respondents filed an answer to the petition, Puerto Rico declared bankruptcy pursuant to the provisions of PROMESA and filed a petition under Title III of PROMESA to adjust its debt obligations. In re Commonwealth of Puerto Rico, No. 17-3283 (LTS) (D.P.R. filed May 3, 2017).

On May 30, 2017, the Commonwealth filed a Notice of Automatic Stay in this case. (Docket No. 34.) The Court denied the stay, reasoning that the stay does not apply to petitions for habeas relief. (Docket No. 35.) Thereafter, the Commonwealth moved to dismiss and also moved to clarify the legal basis for the Court's denial of the Notice of Stay. (Docket Nos. 36, 37.) On June 16, 2017, Atiles-Gabriel responded, arguing that this habeas petition is not stayed by the Commonwealth's Title III case under PROMESA. (Docket No. 39.)

**II.     Discussion**

The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), see 48 U.S.C. §§ 2102-2241, is a bankruptcy-like statute enacted by Congress and signed into law in June 2016 to help address the insolvency of the Government of Puerto Rico. See generally Peaje Inv. LLC v. García-Padilla, 845 F.3d 505, 509 (1st Cir. 2017) (discussing the statute's purpose). PROMESA establishes a Financial Oversight and Management Board ("the Board") to "provide a method for the covered territory to achieve fiscal responsibility and access to the capital markets."

**Civil No. 15-2108 (GAG)**

48 U.S.C. § 2121. Title III of PROMESA creates a mechanism to allow the Board to restructure and adjust the Commonwealth's debt obligations. §§ 2161-2177 (hereinafter "Title III"). Title III incorporates by reference many sections of the Bankruptcy Code, including 11 U.S.C. § 362 and 11 U.S.C. § 922, which provide for an automatic stay upon the filing of a bankruptcy restructuring petition. § 2161(a).

Respondents now seek to avail themselves of Title III's automatic stay, incorporated by reference to section 362(a) and 922(a) of the Bankruptcy Code, in this habeas case. Section 362(a)(1) provides an automatic stay applicable to "the commencement or continuation" of "a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before commencement of the case under [Title 11], or to recover a claim against the debtor that arose before the commencement of the case under [Title 11]." 11 U.S.C. § 362(a)(1). Similarly, subsection 362(a)(6) automatically stays "any act to collect, assess, or recover a claim against the debtor" arising before the petition.[2] The section 362(a) stay is extraordinarily broad: it protects the debtor from nearly any act to collect a prepetition claim and any action affecting the property of the debtor's estate, subject only to section 362(b)'s narrow exceptions. See 3 Alan N. Resnick et al., Collier on Bankruptcy ¶ 362.03 (16th ed. 2017); see also § 362(b) (excepting from the automatic stay criminal proceedings, domestic support obligations, certain property actions, and actions by a governmental unit to enforce its police and regulatory power, among many others).

Section 922(a), which applies to adjustment of the debts of a municipality, provides an automatic stay applicable to "the commencement or continuation" of "a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a). Section 922(a) supplements, but does not supplant, section

---

[2] The remaining 362(a) subsections are inapplicable here. See § 362(a)(2)-(5), (7), (8).

3

362(a). Section 922(a) applies to both prepetition and post-petition actions. See In re Jefferson Ctny, Ala., 484 B.R. 427, 447-49 (Bankr. S.D. Ala. 2012) (reasoning that the absence of limiting language in section 922(a)(1) means the section's "reach is not limited to just pre-bankruptcy claims"). However, like much of section 362(a), it only applies to actions that seek to "enforce a claim" against the debtor. Compare § 362(a) with § 922(a).

In section 101(5),[3] the Code defines "claim" as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Under section 101(5)(A), a "claim" is a right to payment—no matter the form. Under section 101(5)(B), a "claim" is a right to an equitable remedy—no matter the form—so long as "a monetary payment is an alternative for the equitable remedy." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35-36 (1st Cir. 2009) (citations omitted). The statute's text makes clear that a claim concerns "an ultimate right to payment." In re City of Stockton, 499 B.R. 802, 806 (E.D. Cal. 2013). This aligns with Congressional intent—the term claim was given the "broadest available definition." F.C.C. v. NextWave Pers. Commc'ns, 537 U.S. 293, 302 (2003) (quoting Johnson v. Home State Bank, 501 U.S. 78, 83-84 (1991)).

The statutory definition of "claim" does not include a petition for writ of habeas corpus within its scope. A habeas petition seeks to vacate, set aside, or correct the petitioner's judgment or sentence. 22 U.S.C. § 2254. The relief sought concerns a person's liberty; it does not seek a right to payment, nor an equitable remedy for which monetary payment is an alternative remedy. See §

---

[3] PROMESA incorporates these definitions. 48 U.S.C. § 2161.

101(5)(A)-(B). Thus, section 922(a) and 362(a)(6) are inapplicable to a habeas petition, because those automatic stay provisions apply to enforcing or recovering a "claim" and a habeas petition is not a "claim" within the meaning of the statute.

If Title III stays habeas proceedings, it must be as a result of section 362(a)(1). Statutory interpretation begins—as one might expect—with the text of the statute. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (citations omitted). "If the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." In re Rudler, 576 F.3d 37, 44 (1st Cir. 2009) (internal citations and quotations omitted). Thus, plain meaning should only apply if the language is not ambiguous and would not "lead to absurd results." In re Fahey, 779 F.3d 1, 11 (1st Cir. 2015) (Thompson, C.J., dissenting) (quoting In re Rudler, 576 F.3d at 44-45).

Section 362(a)(1) operates as a stay of "a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor . . . ." 11 U.S.C. § 362(a)(1). The statute includes two clauses describing the types of actions subject to the stay. Based on the word "or" separating the two clauses, the clauses appear to operate independently. Taking the latter first, the second clause describes a category of actions—those "to recover a claim." As elucidated above, that category of actions is inapplicable here, because a habeas petition is not a "claim" within the meaning of section 101(5).

The first clause of section 362(a)(1) stays "a judicial, administrative, or other action or proceeding" against the debtor. Those terms are not further defined by the Bankruptcy Code. This Court is not aware of any prior decisions in which a court has directly addressed whether a habeas

5

**Civil No. 15-2108 (GAG)**

petition falls within the gamut of section 362(a)(1).[4] Ostensibly, a habeas petition could fall within the nearly all-encompassing language of a judicial action or other action or proceeding against the Commonwealth. See Collier at ¶ 362.03 (The stay is "drafted so broadly that it encompasses all types of legal proceedings, subject only to the exceptions provided in section 362(b)"). The issue currently before the Court is whether a Title III case under PROMESA, which incorporates section 362(a)(1)'s automatic stay by reference, surreptitiously suspends the writ of habeas corpus during the pendency of the Title III case.

The United States Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Art. I, § 9, cl. 2. By statute, Congress has made this constitutional protection available in federal courts in Puerto Rico, 28 U.S.C. § 2254, as well as Puerto Rico state courts, 48 U.S.C. § 872. See also INS v. St. Cyr, 533 U.S. 289, 299-315 (2001) (recognizing the constitutional core of the writ of habeas corpus based precedent "as to the extent to which habeas review could be limited consistent with the Constitution"). Fundamentally, Congress lacks "the power to switch the Constitution on or off at will." Boumediene v. Bush, 553 U.S. 723, 765 (2008) (holding the Military Commissions Act of 2006 unconstitutionally violated the Suspension Clause by denying the writ to individuals detained in Guantanamo Bay).

If section 362(a)(1) is read to apply to habeas proceedings during the pendency of the Title III case, the stay would effectively suspend the writ of habeas corpus. This reading of the statute would raise significant constitutional problems. When two interpretations of a statute are possible, one of which would raise serious constitutional problems, and the other of which would avoid serious

---

[4] However, since the filing of the Title III petition, the issue has begun to percolate in courts of this district. See, e.g., Cruz-Rodriguez v. Administracion de Correccion de P.R., No. 17-1464 (WGY) (D.P.R. June 20, 2017) (Order re Purported "Stay").

6

constitutional problems, the court is "obligated to construe the statute to avoid such problems." St. Cyr, 533 U.S. at 300 (2001) (citations omitted). The principle of constitutional avoidance counsels that a habeas petition must fall outside the limits of section 362(a)(1). See, e.g., Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 205 (2009) (recognizing the "well-established principle" that courts "will not decide a constitutional question if there is some other ground upon which to dispose of the case.") (quotation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (when legislation's constitutionality is in serious doubt, courts must determine whether it is "fairly possible" to construe the statute to avoid the constitutional question) (citations omitted).

There is good reason to doubt that Congress intended section 362(a)(1) to stay habeas proceedings. In municipal reorganization cases, the Bankruptcy Code's guiding principles—a debtor's "fresh start" and a creditor's adequate protection—does not map seamlessly onto public entities. See Collier at ¶ 900.01 (unlike corporate reorganization cases, municipal reorganization under chapter 9 "does not attempt to balance the rights of the municipality and its creditors); see also In re Richmond Sch. Dist., 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991) (recognizing chapter 9's specific design to meet the needs of a municipality). For example, section 362(b)(4) recognizes the principle that the government's police and regulatory power trumps the "fresh start" principles underlying the Code's automatic stay. See 11 U.S.C. § 362(b)(4) (excepting from the stay "an action or proceeding by a governmental unit or organization . . . to enforce such governmental unit's or organization's police and regulatory power . . ."). The situation here is the inverse of section 362(b)(4), but the principle is entirely consistent.

Even if Congress had intended Title III to trigger a stay so broad as to suspend the writ of habeas corpus, Congress would not have manifested that intent by legislative silence. Courts adhere to "the longstanding rule requiring a clear statement of congressional intent to repeal habeas

**Civil No. 15-2108 (GAG)**

jurisdiction." St. Cyr, 533 U.S. at 298 (citations omitted). Clear statement rules require that "Congress must articulate specific and unambiguous statutory directives to effect a repeal." Id. at 299. Mere implications from the statute's text or the legislative history are insufficient to repeal habeas jurisdiction. Id. Thus, if Congress intended a petition under Title III of PROMESA to stay a habeas petition, Congress would have said so.

Side-stepping the writ's constitutional stature, the Commonwealth stresses the "gargantuan costs imposed upon the Commonwealth" in translating the criminal record to defend a habeas petition. (Docket No. 37, at 7.) This argument is unavailing both as a matter of federal law and common sense. Translation requirements are set forth in the Rules Governing Section 2254 and 2255 Cases. See Rule 5(c). The Jones Act dictates that federal courts must conduct proceedings in the English language. 48 U.S.C. § 864. The First Circuit has repeatedly reaffirmed this requirement. United States v. Roman-Huertas, 848 F.3d 72, 78 (1st Cir. 2017); United States v. Rivera-Rosario, 300 F.3d 1, 5-10 (1st Cir. 2002). Whatever the cost of translating the criminal record, it differs by orders of magnitude when compared to the Commonwealth's debt obligations. The cost of translation cannot compare, however, to the fundamental liberty interest—freedom from unlawful restraint—protected by the writ of habeas corpus and the Constitution.

Finally, reading PROMESA as a whole, it is unlikely Congress intended the filing of a Title III petition to trigger a stay so broad that the availability of habeas procedures would even be called into question. See, e.g., 48 U.S.C. 2194(a)-(d), (m)-(n) (establishing a limited, temporary stay for debt-related litigation upon the establishment of the Oversight Board, which continues upon the filing of a Title III petition). Despite its critical financial state, the Commonwealth of Puerto Rico continues to function as a government. The people of Puerto Rico continue to enjoy their constitutional rights as United States citizens. PROMESA recognizes the Commonwealth's

**Civil No. 15-2108 (GAG)**

continued responsibility to operate a government, and contemplates continued "Compliance with Federal laws." 48 U.S.C. § 2106 (unless otherwise provided, "nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government . . . from compliance with Federal law or requirements" or territorial law implementing a federal program protecting the health, safety, and environment of persons in the territory). Moreover, given the Puerto Rico's unique status and the unparalleled scope of the Commonwealth's obligations to both creditors and citizens, an overbroad application of the automatic stay would risk transgressing PROMESA's statutory framework and the boundaries of the Constitution.

### III. Conclusion

For the reasons set forth above, this matter is not stayed. Respondents' motion at Docket No. 37 is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of June, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge